## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TYREE YOUNG**                                      **CIVIL ACTION**

**VERSUS**                                           **NO.  11-1630**

**STEVE RADER, WARDEN**                              **SECTION  "R"(4)**

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.    Factual Background

The petitioner, Tyree Young ("Young"), is a convicted inmate incarcerated in the Dixon Correctional Center in Jackson, Louisiana.[2]  On September 15, 2003, Young and a co-defendant, Larry Smith, were charged by bill of information in St. Tammany Parish with one count of

---

[1]Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

possession of cocaine and one count of possession of methylenedioxymethamphetamine ("MDMA" a/k/a Ecstasy).[3]

The record reflects that, on July 23, 2003, Louisiana Probation and Parole Officer Mike Phelps and Officer Lusto went to 1495 West Hall Avenue in or near Slidell.[4]  The officers were attempting to execute an arrest warrant against Larry Smith for violations of his probation.  They had unsuccessfully searched for Smith at his primary address, and Officer Lusto was aware that Smith frequented the West Hall Avenue home, which was his daughter's residence.

Smith answered the door at the West Hall Avenue home, but then moved back into the home, yelling out that he was being arrested.  As the officers stepped into the home to handcuff Smith, they saw a man at the kitchen table and a woman in the living room.  The woman in the living room alerted another woman to the presence of the parole officers.  The officers became concerned for their safety.  They were concerned about the use of weapons against them and were aware that convicted felons often associated with one another.  The officers were also aware that it was a violation of the conditions of probation and parole for convicted felons to associate with one another.  They spoke to Smith's daughter, Lakeisha Sylve, and verified she was a resident of the home.  Officer Phelps asked Sylve if anyone else was present in the residence.  Sylve replied no one else was present "that she knew of[.]"  Officer Phelps asked for permission to "look[,]" and Sylve stated, "You can search the whole house if you would like."  While speaking to Sylve, Officer

---

[3]St. Rec. Vol. 3 of 6, Bill of Information, 9/15/03.

[4]The facts were taken from the published opinion of the Louisiana First Circuit Court of Appeal after Young's first direct appeal.  *State v. Young*, 943 So.2d 1118, 1121-22 (La. App. 1st Cir. 2006); St. Rec. Vol. 5 of 6, 1st Cir. Opinion, 2006-KA-0234, pp. 3-5, 9/15/06.

Phelps noticed a piece of cellophane in the ashtray on the kitchen table containing a substance that he believed, based on his eight years of experience in law enforcement, to be marijuana.

In addition to granting consent to search the home, Sylve accompanied Officer Phelps walking through the home, identifying the different rooms.  When Sylve entered the master bedroom, however, she appeared startled.  Young was standing between the closet and the bathroom door in the room.  Officer Phelps patted down Young and discovered $587.00 in his pocket.  He escorted Young into the kitchen.

Officer Phelps then returned to the master bedroom to finish clearing the room.  In the garbage can, he saw cigar tobacco and a bag containing what appeared to be powder cocaine residue. Officer Phelps was aware that drug users often removed the tobacco from cigars and replaced it with marijuana.  Officer Phelps asked Sylve if any narcotics or weapons were present in the home.  Sylve told Officer Phelps he was "welcome to search the residence [,]" and that he could "turn it upside down or whatever."  Officer Phelps looked in the closet of the master bedroom and saw a bag of powder cocaine located approximately three feet from where Young had been standing.  The officers then advised everyone present of their *Miranda* rights.  Officer Phelps did not threaten Sylve at any time.

Smith and Young were advised they would be screened for drugs. Smith admitted he had been smoking crack cocaine.  Young conceded that he had been snorting cocaine.  He also subsequently admitted he had been partying for a couple of days, using cocaine and ecstasy.  Officer Phelps did not promise Young  anything in return for his statement.  He also did not pressure, coerce, threaten, or beat the defendant in order to obtain the statement.

Sylve testified that Officer Phelps was already in her living room when she came out to see what was occurring.  According to Sylve, Smith, her father, had been arrested.  She asked the probation officers about the charge against him and the potential sentence involved.  Officer Phelps asked Sylve if anyone else was present in the home, and she replied negatively.  Sylve conceded that Young and a quantity of cocaine were later discovered in her room.  She also did not dispute that marijuana was found on the kitchen table.  She also indicated that Officer Phelps first asked for consent to search and then, only for consent to search Young's belongings after finding him in the bedroom.

On cross-examination, Sylve indicated she wanted to cooperate with the police when they came to her house.  She also had no problem with Officer Phelps confirming her claim that no one else was present in the home, especially after he heard a noise in the back of the house.  She claimed Officer Phelps asked her for consent after he discovered the cocaine and her .22 caliber handgun.  She also claimed the cocaine was not in plain sight, but was underneath clothes in a basket.

Young was tried before a jury on May 9 and 12, 2005, and he was found guilty as charged on both counts.[5]  The state trial court sentenced Young to serve five years in prison at hard labor on each count to run concurrently.[6]  The State filed multiple offender bills against Young on May 31, 2005, and July 15, 2005, charging him as a fourth felony offender related to the second count,

---

[5]St. Rec. Vol. 4 of 6, Trial Minutes, 5/9/05; Trial Minutes, 5/12/05; Verdict Form, 5/12/05; Trial Transcript, 5/9/05; St. Rec. Vol. 5 of 6, Trial Transcript (continued), 5/9/05; Trial Transcript, 5/12/05.

[6]St. Rec. Vol. 4 of 6, Sentencing Minutes, 5/31/05; St. Rec. Vol. 5 of 6, Sentencing Transcript, 5/31/05.

possession of MDMA.[7]  After a hearing held August 3, 2005, the state trial court resentenced him as a multiple offender as to count two to serve 20 years in prison at hard labor.[8]

On direct appeal, Young's counsel argued that the Trial Court erred in denying the motion to suppress evidence based on the warrantless search of the residence.[9]  On September 15, 2006, the Louisiana First Circuit affirmed the conviction and sentence as to the first count, possession of cocaine, finding that the officers were justified by exigent circumstances in seizing the cocaine.[10] The court, however, vacated the conviction and sentence on count two finding that the verdict for that charge had to be by separate bill of information, because it required a unanimous twelve person verdict, and the sentence imposed was illegally lenient.

On October 16, 2006, Young's counsel timely[11] submitted a writ application with the Louisiana Supreme Court seeking review of that ruling.[12]  On May 4, 2007, the Louisiana Supreme Court denied without stated reasons Young's writ application seeking review of this first direct appeal.[13]

---

[7]St. Rec. Vol. 4 of 6, Multiple Bill, 5/31/05; Multiple Bill, 7/15/05.  Young apparently sought review of the Trial Court's post-conviction orders, which applications were denied by the Louisiana First Circuit.  St. Rec. Vol. 4 of 6, 1st Cir. Order, 2005-KW-1111, 6/27/05; St. Rec. Vol. 3 of 6, 1st Cir. Order, 2005-KW-0949, 6/27/05.

[8]St. Rec. Vol. 4 of 6, Multiple Bill Hearing Minutes, 8/3/05; St. Rec. Vol. 5 of 6, Multiple Bill Hearing Transcript, 8/5/05.

[9]St. Rec. Vol. 2 of 6, Appeal Brief, 2006-KA-0234, 3/13/06.

[10]*State v. Young*, 943 So.2d 1118 (La. App. 1st Cir. 2006); St. Rec. Vol. 5 of 6, 1st Cir. Opinion, 2006-KA-0234, 9/15/06.

[11]Pursuant to La. S. Ct. R. X§5, counsel had 30 days from the issuance of the state appellate court's opinion to mail or file a timely writ application in the Louisiana Supreme Court.

[12]St. Rec. Vol. 1 of 6, La. S. Ct. Writ Application, 06-K-2488, 10/17/06; St. Rec. Vol. 2 of 6, La. S. Ct. Letter, 2006-K-2488, 10/17/06 (showing postmark 10/16/06).

[13]St. Rec. Vol. 1 of 6, La. S. Ct. Order, 2006-K-2488, 5/4/07; La. S. Ct. Writ Application, 06-K-2488, 10/17/06; St. Rec. Vol. 2 of 6, La. S. Ct. Letter, 2006-K-2488, 10/17/06 (showing postmark 10/16/06).

In the meantime, upon remand of the matter to the state trial court, on November 3, 2006, the State filed a multiple bill against Young as to the first count, possession of cocaine.[14]  At a hearing held January19, 2007, the Court resentenced Young as a fourth felony offender on that count to serve 20 years at hard labor.[15]  The Trial Court denied Young's motion to reconsider the sentence on February 23, 2007.[16]  The Louisiana First Circuit thereafter denied Young's writ application on March 23, 2007, because review of his first appeal was still pending before the Louisiana Supreme Court.[17]

Shortly afterward, on May 3, 2007, the co-defendant, Larry Smith, entered a plea of guilty to count one, possession of cocaine, for which he received a five year sentence.[18]  The State nolle prosequied count two as to him only.[19]  Later, on May 9, 2007, the Trial Court also denied Young's renewed motions for new trial, for post-verdict judgment of acquittal, and to reconsider the sentence.[20]

Later, on direct appeal from the multiple offender resentencing on count one, Young's counsel raised one assignment of error alleging that the Trial Court failed to inform Young of the

---

[14]St. Rec. Vol. 5 of 6, Multiple Bill, 11/3/06.

[15]St. Rec. Vol. 4 of 6, Multiple Offender Hearing Minutes, 1/19/07; St. Rec. Vol. 5 of 6, Multiple Bill Hearing Transcript, 1/19/07.

[16]St. Rec. Vol. 5 of 6, Trial Court Order, 2/23/07; Motion to Reconsider Sentence, 2/16/07.

[17]St. Rec. Vol. 5 of 6, 1st Cir. Order, 2007-KW-0197, 3/23/07.

[18]St. Rec. Vol. 3 of 6, Plea Minutes, 5/3/07; Plea Transcript, 5/3/07; Bill of Information as amended, 5/3/07.

[19]*Id.*

[20]It is unclear from the record as to which conviction this was addressed, since Young had not yet been retried on the second count and the conviction for the first count had already been affirmed.  St. Rec. Vol. 3 of 6, Motion for Post Verdict Judgment of Acquittal, 4/3/07; Trial Court Order, 5/9/07; Motion for New Trial, 4/3/07; Trial Court Order (3), 5/9/07; Motion to Reconsider Sentence, 4/3/07; Trial Court Order(2), 5/9/07; St. Rec. Vol. 5 of 6, Motion to Reconsider Sentence, 2/16/07; Trial Court Order, 2/23/07.

delays for filing for post-conviction relief.[21]   Young, acting pro se, also raised three assignments of error:[22] (1) the Trial Court erred in not allowing him to present affirmative evidence that the guilty pleas in the predicate offenses were constitutionally informed in that he was not informed of, nor did he specifically waive, his right to a trial by jury, his privilege against self-incrimination, and his right to confront his accusers; (2) the Trial Court erred in allowing the State to amend the habitual offender bill of information; and (3) the Trial Court erred in allowing the introduction of the authenticated bills of information for the predicate offenses without providing him copies with the fingerprints.  Finding no merit in the claims, on November 2, 2007, the Louisiana First Circuit affirmed the habitual offender adjudication and sentence as to count one.[23]   Young did not seek review of this ruling.

Shortly before that ruling, on October 16, 2007, the Trial Court called Young to trial before a jury on the remaining charge of possession of MDMA.[24]  The jury that day found him guilty as charged.[25]  On October 18, 2007, the Trial Court denied Young's motions for new trial and  for post verdict judgment of acquittal.[26]  The Trial Court sentenced Young on November 16, 2007, to serve 10 years at hard labor.[27]

---

[21]St. Rec. Vol. 2 of 6, Appeal Brief, 2007-KA-0900, 6/4/07.

[22]St. Rec. Vol. 2 of 6, Supplemental Appeal Brief, 2007-KA-0900, 6/27/07.

[23]*State v. Young*, 966 So.2d 1245 (La. App. 1st Cir. 2007) (Table); St. Rec. Vol. 6 of 6, 1st Cir. Opinion, 2007-KA-0900, 11/2/07.

[24]St. Rec. Vol. 4 of 6, Trial Minutes, 10/16/07; St. Rec. Vol. 6 of 6, Trial Transcript, 10/16/07.

[25]*Id.*; St. Rec. Vol. 6 of 6, Verdict Form, 10/16/07.

[26]St. Rec. Vol. 6 of 6, Motion for New Trial, 10/18/07; Trial Court Order, 10/18/07; Motion for Post-Verdict Judgment of Acquittal, 10/18/07; Trial Court Order (2), 10/18/07.

[27]St. Rec. Vol. 4 of 6, Sentencing Minutes, 11/16/07; St. Rec. Vol. 6 of 6, Sentencing Transcript, 11/16/07.

On direct appeal from that conviction, Young's counsel raised two assignments of error:[28] (1) the Trial Court erred in denying the motion to quash; and (2) the Trial Court erred and/or abused its discretion in denying the motion to suppress.  The Louisiana First Circuit affirmed the conviction on June 26, 2008, finding no merit in either claim.[29]  The Court also denied Young's application for rehearing on July 10, 2008.[30]

His convictions and sentences became final 30 days later, on Monday, August 11, 2008,[31] because he did not timely file for review in the Louisiana Supreme Court.[32] *Butler v. Cain*, 533 F.3d 314 (5th Cir. 2008) (citing *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003)) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)); *Wilson v. Cain*, 564 F.3d 702 (5th Cir. 2009) (timely filed motion for rehearing must be considered in determining the finality of a conviction); *see also Burton v. Stewart*, 549 U.S. 147 (2007) (in a criminal case, judgment includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)).

---

[28]St. Rec. Vol. 2 of 6, Appeal Brief, 2008-KA-0170, 3/4/08.

[29]*State v. Young*, 986 So.2d 258, 2008 WL 2553282, at *1 (La. App. 1st Cir. 2008) (Table, Text in Westlaw); St. Rec. Vol. 3 of 6, 1st Cir. Opinion, 2008-KA-0170, 6/26/08.

[30]St. Rec. Vol. 2 of 6, 1st Cir. Order, 2008-KA-0170, 7/24/08; Application for Rehearing, 2008-KA-0170, 7/10/08.

[31]The thirtieth day was Saturday, August 9, 2008, leaving the deadline to fall under both state and federal law to Monday, August 11, 2008.

[32]Pursuant to La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion to mail or file a timely writ application in the Louisiana Supreme Court, which he did not do.

Shortly before this, on July 23, 2008, Young pro se filed in the Trial Court a motion to correct an illegal sentence on the multiple bill.[33]  The Trial Court denied the motion on August 4, 2008, finding no merit in the claims raised, because Young was properly adjudicated to be a multiple offender.[34]  Young did not seek further review of this order.

Later, on August 15, 2008, five days after his convictions became final, Young's counsel sought untimely[35] review of the direct appeal on the conviction for possession of MDMA in the Louisiana Supreme Court.[36]  The Court denied the application without stated reasons on April 17, 2009.[37]

On October 16, 2009, Young submitted an application for post-conviction relief in which he argued that he was not properly adjudicated to be a multiple offender based on insufficient predicate offenses.[38]  On December 11, 2009, the Trial Court denied relief finding that adjudication was affirmed on appeal and that the claims otherwise lacked merit.[39]  The Trial Court denied Young's request for clarification of the order on January 12, 2010.[40]

---

[33]St. Rec. Vol. 3 of 6, Motion to Correct an Illegal Sentence, 7/23/08.

[34]St. Rec. Vol. 3 of 6, Trial Court Judgment, 8/4/08.

[35]Pursuant to La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's opinion denying the motion for rehearing to mail or file a timely writ application in the Louisiana Supreme Court, which he did not do.  The rehearing was denied on July 10, 2008, and counsel did not mail the writ application to the Louisiana Supreme Court until August 15, 2008.

[36]St. Rec. Vol. 1 of 6, La. S. Ct. Writ Application, 08-K-2114, 8/27/08 (postal metered 8/15/08); St. Rec. Vol. 2 of 6, La. S. Ct. Letter, 2008-K-2114, 8/27/08 (showing postal meter 8/15/08).

[37]*State v. Young*, 6 So.3d 789 (La. 4/17/09); St. Rec. Vol. 1 of 6, La. S. Ct. Order, 2008-K-2114, 4/17/09.

[38]St. Rec. Vol. 3 of 6, Uniform Application for Post-Conviction Relief, 10/20/09 (dated 10/16/09).

[39]St. Rec. Vol. 3 of 6, Trial Court Judgment, 12/11/09.

[40]St. Rec. Vol. 3 of 6, Motion for Clarification, 12/29/09 (dated 12/27/09); Trial Court Order, 1/12/10.

On April 26, 2010, the Louisiana First Circuit denied Young's related writ application submitted January 30, 2010, citing Louisiana's habitual offender law at La. Rev. Stat. Ann. § 15:529.1(D)(1)(b) without further comment.[41]

On May 24, 2010, Young submitted an application to the Louisiana Supreme Court seeking timely review of that order in the Louisiana Supreme Court.[42]  The Court denied Young's writ application on May 27, 2011, for seeking inappropriate post-conviction review, citing La. Code Crim. P. art. 930.3 and *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996).[43]

## II.   <u>Federal Petition</u>

On July 12, 2011, the clerk of this Court filed Young's petition for federal habeas corpus relief in which he raised the following grounds for relief:[44] (1) his continued incarceration has denied him due process where the Trial Court did not properly adjudicate him as a habitual offender; (2) the Trial Court committed error when it failed to properly adjudicate him to be a habitual offender; (3) the Trial Court erred and/or abused its discretion in denying the motion to suppress the evidence; and (4) the Trial Court erred in denying the motion to quash the untimely commencement of trial.

In its response, the State concedes exhaustion of the issues and argues that claims one and two are procedurally barred from review.  Specifically, the State argues that the Louisiana Supreme Court denied review of the claims on post-conviction pursuant to La. Code Crim. P. art. 930.3, and

---

[41]St. Rec. Vol. 3 of 6, 1st Cir. Order, 2010-KW-0258, 4/26/10; St. Rec. Vol. 2 of 6, 1st Cir. Writ Application, 2010-KW-0258, 2/1/10 (dated 1/31/10).

[42]St. Rec. Vol. 1 of 6, La. S. Ct. Writ Application, 10-KH-1246, 6/2/10 (dated 5/24/10); St. Rec. Vol. 3 of 6, La. S. Ct. Letter, 2010-KH-1246, 6/2/10 (showing postmark of 5/26/10).

[43]*State ex rel. Young v. State*, 63 So.3d 997 (La. 2011); St. Rec. Vol. 1 of 6, La. S. Ct. Order, 2010-KH-1246, 5/27/11.

[44]Rec. Doc. No. 1-2.

this denial was the last reasoned decision on the issues.  Alternatively, the State further argues that these two claims are without merit.  The State also contends that Young's third and fourth claims are without merit.

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[45] applies to this petition, which is deemed filed in this court under the federal mailbox rule on June 14, 2011.[46]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State asserts that two of Young's claims are in procedural default.  Although the State discusses the timeliness of Young's federal filing, it fails to consider the timeliness of the underlying state pleadings for which it seems to have given Young tolling credit and credit towards the finality of his convictions.  However, for the reasons below, the Court finds that Young's federal petition

---

[45]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[46]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Young's federal habeas petition on July 12, 2011, when the filing fee was paid.  Young dated his signature on the petition on June 14, 2011.  This is presumed to be the earliest date on which he could have been submitted the pleadings to prison officials for mailing. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

is not timely filed.  Alternatively, the Court will also address the procedural bar defense and the merits of the remaining claims.

IV.    **Statute of Limitations**

The United States Supreme Court has held that "district courts are permitted, but not obligated, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition."  *Day v. McDonough*, 547 U.S. 198, 209 (2006).  "[B]efore acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions . . . and assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issues, and 'determine whether the interests of justice would be better served' by addressing the merits or by dismissing the petition as time barred."  *Id*., 547 U.S. at 210 (citations omitted).

Having thoroughly reviewed the record, the Court can find no undue prejudice arising from the Court's consideration of the timeliness issue and justice would be served by the dismissal of this petition as time-barred.  The record does not find any reason other than inadvertence, unfamiliarity with federal standards of review, and an incomplete recitation of the case's procedural history for the State's failure to raise this defense in its briefs.  *See Prieto v. Quaterman*, 456 F.3d 511 (5th Cir. 2006) (*citing Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998).  Accordingly, **petitioner is hereby specifically advised and instructed that this report and recommendation is notice to him that this court is *sua sponte* raising the issue of procedural default and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report.**  *Magouirk*, 144 F.3d at 350, 360.  The Court therefore will address the limitations issue *sua sponte*.

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[47]  *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001).  As discussed above, Young's conviction was final on August 11, 2008, when he did not timely seek review of his direct appeal in the Louisiana Supreme Court.  Under the plain language of § 2244, Young had one year, or until August 11, 2009, to file a timely federal application for habeas corpus relief and he failed to do so.  Thus, literal application of the statute would bar Young's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.  *See* 28 U.S.C. § 2244(d)(2) (2006).  In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th

---

[47]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

A.     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

D.     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (2006).

Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006). The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition.[48] *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. at 122 (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and

---

[48]Furthermore, requests for documents and transcript copies filed in the state courts are not other collateral review for purposes of the tolling calculation. *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523, at *2 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); *Brown v. Cain*, 112 F. Supp.2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); *Jones v. Johnson*, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling); *Cf. Gonzales v. Wilkinson*, 269 Fed. Appx. 481, 484-86 (5th Cir. Mar. 12, 2008) (delay in receiving transcript copies does not warrant statutory or equitable tolling where motion based on the transcript was not timely or properly filed under state law).

must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

In the instant case, when Young's conviction became final on August 11, 2008, he had at that time a motion to correct his multiple offender sentence pending in the Trial Court. That motion was resolved on August 4, 2008, and remained pending for AEDPA tolling purposes until September 3, 2008, when Young did not seek review of the order.

The AEDPA filing period began running the next day, September 4, 2008, and did so for 365 days, until September 3, 2009, when it expired. Young had not properly filed state post-conviction or other collateral review pending during that time period. Another 42 days passed after the end of the AEDPA filing before he submitted his application for post-conviction relief to the state trial court for filing on October 16, 2009. That pleading, filed in the state courts after expiration of the AEDPA filing period, does not provide any tolling benefit. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

The Court is aware that Young's counsel submitted a writ application to the Louisiana Supreme Court on August 15, 2008.[49] This application was not timely filed under La. S. Ct. Rule X§5. As noted above, pursuant to La. S.Ct. Rule X§5, an application seeking review of a judgment by the court of appeal shall be filed or postmarked by counsel within 30 days of the issuance of the judgment under review or from the denial of a timely filed application for rehearing. *Accord Wilson*, 564 F.3d 704-6 (5th Cir. 2009). Since this was counsel filed, the court need not consider the prisoner mailbox rule. *See Causey*, 450 F.3d at 601.

---

[49]St. Rec. Vol. 1 of 6, La. S. Ct. Writ Application, 08-KA-2114, 8/27/08 (postal metered 8/15/08).

The record shows that counsel mailed the Louisiana Supreme Court writ application on August 15, 2008, which was 35 days after the Louisiana First Circuit denied rehearing.  This was not within the time limit proscribed in La. S. Ct. Rule X§5.  A writ application which fails to comply with La. S. Ct. Rule X§5 is not "properly filed" because it is untimely, and it is not pending as post-conviction review for purposes of the AEDPA's statute of limitations and tolling doctrines. *Butler v. Cain*, 533 F.3d 314, 318-319 (2008); *Larry v. Dretke*, 361 F.3d 890, 897 (5th Cir. 2004) (failure to file state pleadings in the time-frame provided for under state law rendered the pleadings not properly filed); *Wardlaw v. Cain*, 541 F.3d 275, 279 (5th Cir. 2008) (same).  For these reasons, Young's 2008 Louisiana Supreme Court application did not interrupt or toll the AEDPA filing period which expired on August 11, 2009, as calculated above.

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus.  *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998), *cert. denied*, 525 U.S. 1091 (1999); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999).

Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  *Pace*, 544 U.S. at 418-19; *Cousin*, 310 F.3d at 848.  Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner.  *See Holland v. Florida*, __ U.S. __, 130 S.Ct. 2549, 2574-75 (2010) (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition

16

and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman*, 184 F.3d at 402 ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In this case, Young has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling. His counsel's error in untimely filing the relevant writ application is not a basis for equitable tolling. *See Holland*, 130 S. Ct. at 2567.

Young's federal petition is deemed filed on June 14, 2011, which is over 22 months after the AEDPA filing period expired on August 11, 2009. Therefore, Young's federal petition was untimely filed and must be dismissed for that reason.

## V.     Procedural Default (Claim Nos. 1 and 2)

In the alternative, the Court may dismiss Young's first two claims related to his habitual offender adjudication as procedurally barred from federal review.  As outlined in detail previously in this Report, Young has presented these same arguments as to one claim in the state court proceedings.  He first raised the arguments to the Louisiana First Circuit in his second direct appeal after the multiple offender sentence was imposed as to count one, possession of cocaine, on remand after the first appeal.  After the Louisiana First Circuit affirmed the adjudication and sentence, finding his claim to be without merit, Young did not seek further review of that ruling.

Young later raised the arguments and claim again in his application for post-conviction relief through to the Louisiana Supreme Court.  The Louisiana Supreme Court, in the last reasoned decision on the claim, denied relief on procedural grounds citing La. Code Crim. P. art. 930.3[50] and *State ex rel. Melinie.*[51]

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment.  *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260,

---

[50]Under La. Code Crim. P. art. 930.3, post-conviction relief will not be granted unless the petitioner establishes that: (1) the conviction was obtained in violation of the state or federal constitution; (2) the court exceeded its jurisdiction; (3) the conviction or sentence subjected him to double jeopardy; (4) the limitations on the institution of the prosecution had expired; (5) the statute creating the offense for which he was convicted and sentenced is unconstitutional; (6) the conviction or sentence constitute the ex post facto application of law in violation of the federal or state constitution; (7) the results of DNA testing performed proves by clear and convincing evidence that the petitioner is factually innocent of the crime for which he was convicted.

[51]In *Melinie*, the Louisiana Supreme Court, relying on La. Code Crim. P. art. 930.3, ruled that claims of excessive sentence or errors in sentencing which should be raised on direct appeal were not proper grounds for post-conviction relief.

262 (1989)).  The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review.  *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338.  This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.  This Court must consider whether the bar to review relied upon by the Louisiana courts prohibits consideration of the claim on federal habeas corpus review.

### A.    <u>Independent and Adequate State Grounds</u>

For this state-imposed procedural bar to prevent review by this federal habeas court, the bar must be independent and adequate.  A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural bar.  *Amos*, 61 F.3d at 338.  To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  *Glover*, 128 F.3d at 902.  The question of the adequacy of a state procedural bar is itself a federal question.  *Douglas v. Alabama*, 380 U.S. 415, 422 (1965); *Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993).

In this case, the basis for the Louisiana Supreme Court's bar to review were the state procedural requirements found in La. Code Crim. P. art. 930.3 and *State ex rel. Melinie*, which prohibit post-conviction review of claims of excessive sentence and other sentencing errors which could have been resolved on direct appeal.  The Louisiana Supreme Court extended this prohibition to matters arising from multiple offender proceedings and sentences.  *State ex rel. Brown v. State*,

870 So.2d 976 (La. 2004). The bar was therefore based in state law and independent of Young's federal claims.

A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Glover*, 128 F.3d at 902; *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir.1997) (in order to establish that a state procedural rule is not "adequate," a petitioner bears the burden of showing that the state did not strictly or regularly follow the procedural rule). A federal habeas court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985)); *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)). In keeping with this rule, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review. *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094 at *4 n.2 (N.D. Ill. July 18, 2002).

For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts do not honor that bar. *Accord Davis v. Johnson*, No. 4:00CV684-Y, 2001 WL 611164 at *4 n.10 (N.D. Tex. May 30, 2001); *see also*, *Johnson v. Lensing*, No. 99-0005, 1999 WL 562728 at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (Art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*,

No. 97-1546, 1999 WL 518843 (E.D. La. July 20, 1999) (Mentz, J.) (Art. 930.8 was not adequate to bar review because it was misapplied). It is not, however, within the federal court's province to disagree with the application of the bar; it is only to determine its adequacy. *Lee v. Cain*, No. 03-2626, 2004 WL 2984274 at *1 n.2 (E.D. La. Dec. 6, 2004) (Vance, J.) (addressing Art. 930.3 as applied to ineffective assistance of counsel claim). Thus, where such foundation and basis does exist, the bar must stand.

In this case, the state courts relied on La. Code Crim. P. art. 930.3 and *State ex rel. Melinie* to bar review of Young's post-conviction claims challenging his multiple offender proceedings and sentence. The federal courts have repeatedly held that the La. Code Crim. P. art. 930.3 and *State ex rel. Melinie* are both independent and adequate state law grounds for dismissal which bar review of similar claims by the federal courts in a habeas corpus proceeding. *Hull v. Stalder*, 234 F.3d 706, 2000 WL 1598016, at *1 (5th Cir. Sep. 28, 2000) (Art. 930.3, *State ex rel. Melinie*) (Table, Text in Westlaw); *Taylor v. Cain*, No. 07-3929, 2008 WL 4186883, at *16 (E.D. La. Sep. 10, 2008); *Williams v. Cain*, No. 05-0710, 2008 WL 3363562, at *8 (E.D. La. Aug. 8, 2008); *Madina v. Cain*, No. 05-2126, 2006 WL 2726506, at *3 (E.D. La. Sep. 20, 2006); *Johnson v. Andrews*, No. 05-0413, 2006 WL 2294864, at *4 (E.D. La. Aug. 4, 2006); *Williams v. Miller*, No. 05-0086, 2006 WL 2087867, at *9 (E.D. La. Jul. 24, 2006); *Dedmond v. Cain*, No. 03-3375, 2005 WL 1578086, at *8 (E.D. La. Jun. 30, 2005); *Neal v. Kaylo*, No. 01-2211, 2001 WL 1195879 (E.D. La. Oct. 10, 2001); *Leonard v. Hubert*, No. 00-0511, 2001 WL 333123 (E.D. La. Apr. 4, 2001) (Schwartz, J.); *Marshall v. Hubert*, No. 00-0334, 2000 WL 1059820 (E.D. La. Jul. 31, 2000); *Ardis v. Cain*, No. 99-1862, 1999 WL 997497 (E.D. La. Oct. 29, 1999).

The Court finds that the state procedural bar imposed under La. Code Crim. P. art. 930.3 and *State ex rel. Melinie* is adequate to bar review of the merits of Young's first and second claims challenging the multiple offender adjudication proceeding.

Young can be excepted from the procedural bar to federal review of his claims only if he can show cause for his default and prejudice attributed thereto.  Alternatively, he could demonstrate that the federal court's failure to review the claims will result in a fundamental miscarriage of justice. *Nobles*, 127 F.3d at 414 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262 and *Engle v. Isaac*, 456 U.S. 107, 129 (1982)).  These exceptions to the imposition of a bar will be addressed below.

### B.   Cause and Prejudice

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *Engle*, 456 U.S. at 129).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id*. at 486.

In this case, Young has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts.  The Court's review of the record does not support

a finding that any factor external to the defense prevented Young from raising the claims in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)). Young's claims are therefore procedurally barred from review by this federal habeas corpus court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[52]

### C.    Fundamental Miscarriage of Justice

Young may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to

---

[52]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not <u>required</u> to raise the procedural default argument sua sponte. *Id.*

23

the defendant's guilt.  *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tx. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception.  *Glover*, 128 F.3d at 903.

Young does not present any indication and the record contains nothing that suggests his actual innocence on the underlying conviction.  His claims address alleged procedural failings in the criminal proceedings, and not his actual innocence.  He presents no evidence or argument of the kind of actual innocence that would excuse his procedural default.  He has failed to overcome the procedural bar to his claims.

Young's first two claims, alleging that his continued incarceration has denied him due process where the Trial Court did not properly adjudicate him as a habitual offender and that the Trial Court committed error when it failed to properly adjudicate him to be a habitual offender, are procedurally barred and can be dismissed with prejudice for that reason.

## VI.   Standards of Review on the Merits of the Remaining Claims

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2)

24

(2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.  *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *Cf. Wright v. West*, 505 U.S. 277, 304 (1992).  The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *See, e.g., id.* at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir. 2000), *cert. denied*, 531 U.S. 1002 (2000).  "'[A] federal habeas court may not

issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## VII.   Denial of the Motion to Suppress Evidence (Claim No. 3)

Young argues that the state trial court erred in denying the motion to suppress the evidence seized by the officers without a warrant and without a legitimate exception to the warrant requirement.  Young raised this claim in his first direct appeal.[53]  He argued that the consent for the search was not adequate and that no other exception to the warrant requirement existed to support the officers' search of the home.  The Louisiana First Circuit found no merit to the claim and resolved that both consent had been given and exigent circumstances related to the officers' safety were at issue to support the search.  This was the last reasoned opinion on this issue, because the Louisiana Supreme Court denied the subsequent writ application without stated reasons.  *Ylst v.*

---

[53]The claim of improper denial of the motion to suppress raised in his third appeal was related to his statement regarding the ecstasy found in his shoe.

*Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

The State submits in its opposition that Young's claim is without merit for his failure to show that the state courts' denial of relief on this claim was contrary to or an unreasonable application of Supreme Court law.

Fourth Amendment violations are generally not cognizable on federal habeas review. *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone v. Powell*, the United States Supreme Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." (footnotes omitted) *Id.*, 428 U.S. at 494. A "full and fair" hearing as contemplated by *Stone v. Powell* refers to thoughtful consideration by the factfinder and at least the availability of meaningful appellate review by a higher state court. *Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986) (per curium) (quoting *O'Berry v. Wainwright*, 546 F.2d 1204, 1213 (5th Cir. 1977)).

The United States Court of Appeals for the Fifth Circuit has further interpreted an "opportunity for full and fair litigation" to mean just that, "an opportunity." *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978); *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002), *cert. denied*, 537 U.S. 1196 (2003). "If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Caver*, at 1192.

27

Thus, it is the opportunity to present a Fourth Amendment claim to the state courts that is the basis of the *Stone v. Powell* prohibition, without regard for whether that opportunity is actually exercised or is unsuccessful. *Janecka*, 301 F.3d at 320-21. Even if a defendant fails to take advantage of the opportunity to litigate a motion to suppress or assert Fourth Amendment claims, the fact that the opportunity existed suffices for the *Stone v. Powell* bar to apply. *Id.*, at 320. The Fifth Circuit has also held that the *Stone v. Powell* bar applies despite an error by the state court in deciding the merits of the Fourth Amendment claim. *Swicegood v. Alabama*, 577 F.2d 1322, 1324-1325 (5th Cir. 1978).

Therefore, "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way to prevent the actual litigation of fourth amendment claims on the merits, the rationale of *Caver* dictates that *Swicegood*'s application of *Stone* despite a mistake in adjudicating the merits must apply with equal force to procedural mistakes that thwart the presentation of fourth amendment claims." *Williams v. Brown*, 609 F.2d 216, 220 (5th Cir. 1980); *see also*, *Janecka*, 301 F.3d at 321 (same). Absent any plea or proof by petitioner that he was denied a full and fair hearing in state court, his request for federal habeas relief based upon a Fourth Amendment violation is precluded. *Stone*, 428 U.S. at 494-95 n.37; *Bell v. Lynaugh*, 828 F.2d 1085, 1091-92 (5th Cir. 1987); *Davis v. Blackburn*, 803 F.2d 1371, 1372 (5th Cir. 1986).

Young does not allege or demonstrate that Louisiana state courts routinely or systematically preclude litigation of a defendant's Fourth Amendment claims, and as will be shown he received appropriate review in the state courts. Moreover, "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims." *Bailey v. Cain*, No.

06-839, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007) ( Duval, J.) (order adopting Report and Recommendation).

In this case, Young raised his Fourth Amendment claims in the pretrial motion to suppress and on direct appeal.  As outlined above, the state trial court denied the motion to suppress finding that the evidence was properly seized under the circumstances.  The Louisiana First Circuit also denied his claim on direct appeal, as did the Louisiana Supreme Court in his subsequent writ application.  *See Ylst*.

The record, therefore, demonstrates that Young was provided with ample opportunity to and did present his Fourth Amendment claim, although his efforts were unsuccessful.  After reviewing the record, the Court finds that "the material facts were adequately developed in state court, and [petitioner] has not alleged any undeveloped evidence sufficient to call into question the reliability of the state court's determination of [his] federal claims."  *Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994).  Each of the state courts considered and reviewed his arguments finding them to be without merit.  *Accord*, *Ylst*.  The fact that petitioner may disagree with the state courts' decision to deny relief is not sufficient to overcome the bar in *Stone v. Powell* to federal habeas corpus review.  *Janecka*, 301 F.3d at 320-21.  The review at all levels of the state courts was sufficient to meet due process requirements.

Young is not entitled to federal habeas court review of his Fourth Amendment claims.  Because he received and exercised the opportunity for a full and fair hearing in the state courts, *Stone v. Powell* bars consideration of his Fourth Amendment claim here.

**VIII.   Denial of the Motion to Quash (Claim No. 4)**

Under a broad reading, Young argues that his second trial on count two, possession of MDMA, was untimely.  The motion to quash was denied by the state courts on the finding that Young filed a writ application with the Louisiana Supreme Court after the first direct appeal which tolled the time for bringing the second prosecution.  Young contends that the state courts erred in not requiring the State to meet its burden of proof to show that writ was timely filed, as required by La. Code Crim. P. art. 922(D).  He claims instead that the state appellate court obtained the necessary proof itself rather than force the State to do so.

As an initial matter, a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law."  *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); *see also Swarthout v. Cooke*, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law).  Thus, the Louisiana appellate court's decision to review the evidence before it or to obtain it is not the issue to be considered here.  This court's analysis must focus instead on due process considerations.  *Neyland*, 785 F.2d at 1293.

The due process standard requires this court to consider "whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient."  *Swarthout*, 131 S. Ct. at 861 (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).  Due process requires, therefore, that the court grant habeas relief only when the errors of the state court make the underlying proceeding fundamentally unfair.  *Neyland*, 785 F.2d at 1293.  In the instant case, Young has not met this burden.

Under a broad reading, Young's complaint is that the state appellate court located and considered documentation obtained from the state's highest court to establish that Young's 2006 writ application to the Louisiana Supreme Court was timely filed under La. Code Crim. P. art. 922(D) in order to toll the time allowed for his retrial.  As noted above, the application at issue was mailed by counsel on October 16, 2006, which was exactly 30 days after the Louisiana First Circuit issued its opinion on September 15, 2006.[54]  He does not and cannot deny that the writ application at issue was in fact timely filed by his counsel after the first direct appeal.  This evidence also appears in the record now before this Court.

Young has not demonstrated that the outcome of the hearing was rendered unfair where the courts' factual findings about the filing date were based in truth and un-refutable on the record. Without some showing of fundamental unfairness, the state court's denial of relief on this issue was not contrary to, or an unreasonable application of, Supreme Court law.  Young is not entitled to relief on this claim.

## IX.   Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Tyree Young's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE** as time barred, or alternatively as procedurally barred and meritless.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

---

[54]St. Rec. Vol. 1 of 6, La. S. Ct. Writ Application, 06-K-2488, 10/17/06; St. Rec. Vol. 2 of 6, La. S. Ct. Letter, 2006-K-2488, 10/17/06 (showing postmark 10/16/06).

court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[55]

New Orleans, Louisiana, this 10th day of November, 2011.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[55]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.